UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE S. V.,[1] <br>         Plaintiff, <br> v. <br> KILOLO KIJAKAZI, <br>         Defendant. | Case No. 22-cv-06385-SK <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Regarding Docket Nos. 16, 18 |

This matter comes before the Court upon consideration of Plaintiff Diane S. V.'s motion for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, and relevant legal authority, and the record in the case, the Court hereby DENIES Plaintiff's motion and GRANTS the Commissioner's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff was born on May 28, 1965. (Administrative Record ("AR") 346.) On August 3, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging that she was disabled starting on August 21, 2019. (AR 346.) The claim was denied on February 17, 2021, and upon reconsideration on April 30, 2021. (AR 16.)

On October 21, 2021, Plaintiff, accompanied by counsel, testified at a hearing before the Administrative Law Judge ("ALJ"). (AR 185-218.) Plaintiff and vocational expert David

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Dettmer both testified at the hearing.  (*Id.*)

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 1, 2024, and that Plaintiff has not engaged in substantial gainful activity since August 21, 2019, the alleged onset date.  (AR 18.)  The ALJ found that Plaintiff has the following severe impairments:  lumbar degenerative disc/joint disease with sciatica, cervical degenerative disc disease, and left carpal tunnel syndrome.  (AR 18.)  The ALJ found some medical impairments are not severe:  bilateral lateral epicondylitis[2] and bilateral tendonitis of the flexor muscles of the forearm, right carpal tunnel syndrome, sacroiliac joint spurring, adhesive capsulitis left shoulder, hypothyroid, high cholesterol (hyperlipidemia), UTI, dog bite, rash, positive Covid test, fibroids of the uterus status post hysterectomy, depression, and anxiety.  (AR 19.)

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).  (AR 22.)  The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that she has the following limitations:

> she can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently using primary the right dominant arm with the left to assist, can stand and walk up to 6 hours each and sit up to 6 hours in an 8 hour day, can frequently handle, finger, reach in front and laterally with the left upper extremity, can occasionally reach overhead bilaterally, can occasionally climb ramps and taris, stop, knee; or crouch, and can never crawl or climb ladders, ropes, and scaffolds.

(Dkt. No. 14-3 (AR 23).)  The ALJ concluded that Plaintiff is capable of performing past relevant work as an estimator, office manager, and a composite job of estimator/motor vehicle dispatcher,

---

[2] Lateral epicondylitis is commonly known as "tennis elbow."  It is defined as "swelling or tearing of the tendons that bend your wrist backward away from your palm.  It's caused by repetitive motion of the forearm muscles, which attach to the outside of your elbow. The muscles and tendons become sore from excessive strain."  Hopkinsmedicine.org/health/conditions.  Throughout this Order, the references to epicondylitis will be to "tennis elbow."

1    and the ALJ thus determined that Plaintiff is not under a disability as defined by the Social

2    Security Act from August 21, 2019, to the date of decision, November 8, 2021.  (AR 28)

## ANALYSIS

**A.     Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ").  *Reddick*, 157 F.3d at 720.  The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation.  *Id.* at 720-21.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.  The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  However, the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows.  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months.  (*Id.*)  Third, if the claimant's

3

impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. 20 C.F.R. § 20 C.F.R. 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

**C.     Substantial Evidence in the Record Supports the ALJ's Decision.**

Plaintiff's challenge to the ALJ's determination is limited to: (1) the ALJ's rejection of Plaintiff's testimony that she is limited to using her left hand for typing or fine manipulation for no more than three hours in a day due to her carpal tunnel syndrome and lateral epicondylitis on her left arm and hand; (2) the ALJ's evaluation of Mark W. Howard, M.D.; and (3) the treatment of new evidence submitted to the Appeals Council.

**1.     Plaintiff's Testimony.**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722. In evaluating the credibility of a claimant's subjective testimony about symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)). First, "the claimant 'must produce objective medical evidence of an

4

underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). Second, if the claimant provides the evidence required by step one, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1281, 1283-84).

"The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); (citation omitted). An ALJ "may find the claimant's allegations of severity to be not credible," but the ALJ "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345 (internal quotation marks and citation omitted). The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284. If the ALJ supports his or her credibility determination with substantial evidence in the record, the Court may not "second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for rejecting her testimony that she was restricted from typing and fine manipulation for no more than three hours. Plaintiff testified at her hearing that she could only use her left hand for typing or fine manipulation for no more than three hours a day in an eight-hour workday. (AR 206-207.) She also noted in a questionnaire that, although she could perform household chores, she could only do

1  so for 30 minutes because of pain in her lower back and left arm. (AR 404-405.) The ALJ

2  considered this testimony, and after finding that there is medical evidence to show the underlying

3  impairment could produce the symptoms alleged by Plaintiff, the ALJ gave three reasons for

4  discounting Plaintiff's testimony regarding the severity of her symptoms – (1) the medical

5  evidence did not support the extent of Plaintiff's claimed limitations; (2) the record reflected a

6  conservative and minimal course of treatment; and (3) Plaintiff's daily activities suggested her

7  ability to perform the residual functional capacity the ALJ determined.

### i. Medical Evidence in the Record.

"Medical reports indicating that the claimant's ailments are not as severe as the claimant alleged constitute significant and substantial reasons to find a claimant's testimony 'less than completely credible.'" *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (quoting *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)); *see also Smolen*, 80 F.3d at 1284. Here, the ALJ found that the medical evidence supports a degree of functional limitations due to her left carpal tunnel syndrome, but just not to the degree of limitation claimed by Plaintiff. (AR 24.) The ALJ noted the electrodiagnostic study performed in September 2019 showing findings consistent with moderate median neuropathy (carpal tunnel syndrome) across the left wrist but that there was no evidence of denervation or axonal loss (AR 24 (citing AR 452-54).) The report from the study conducted on September 26, 2019, stated:

> 1. There is evidence of a MODERATE, LEFT MEDIAN mononeuropathy across the wrist (carpal tunnel syndrome) without evidence of denervation or axonal loss. There is NO electrodiagnostic evidence of a Left Ulnar mononeuropathy across the wrist or the elbow (cubital tunnel syndrome).
>
> There is NO electrodiagnostic evidence of a Left Radial mononeuropathy at the elbow.
>
> 2. There is NO electrodiagnostic evidence of Peripheral Polyneuropathy.

(AR 454 (emphasis in original).) The ALJ further noted that some physical examinations showed some abnormal findings such as tenderness to palpation, pain with range of motion of the back, as well as positive Phalen's and/or Tinel's test on her left side. (AR 24 (citing AR 909, 1129, 1146, 1167-77).) However, the ALJ also noted that the medical evidence typically showed substantially

1  normal musculoskeletal, neurologic, and other body system findings including normal range of
2  motion of the left upper extremity, ability to move her extremities well, normal 5/5 motor strength
3  in all extremities, intact sensation, no weakness, and deep tendon reflexes within normal limits.
4  (AR 24 (citing AR 456, 515-16, 1150, 1167-68).)  Additionally, the medical imaging did not show
5  cord or nerve root compression or other acute findings.  (AR 24-25 (citing AR 1181).)

6  Plaintiff disputes the ALJ's characterization of the medical evidence and argues that the
7  medical evidence supports her claimed limitation to typing or fine manipulation for no more than
8  three hours.  However, the evidence she points to does not undermine the ALJ's assessment of the
9  medical evidence and her credibility.

10  On May 8, Plaintiff was seen for lateral epicondylitis in the left elbow.  (AR 619.)  Upon
11  physical examination of her left elbow, she had tenderness in the lateral epicondyle and resisted
12  wrist extension with pain, but palpitation was normal, she had full range of motion, motor strength
13  was normal bilaterally, motor tone was normal, sensation was intact to light touch in all
14  dermatomes, and her muscles displayed no weakness.  (AR 620.)  Plaintiff was diagnosed with
15  lateral epicondylitis in the left elbow but no medications were prescribed and it was noted that she
16  could return to full work/activity.  (AR 458, 543, 621.)  Plaintiff was seen again on May 23, 2019,
17  and similar findings were made.  The examination notes also stated that she had no tenderness or
18  swelling of extremities, range of motion was with normal limits, and she had normal muscle
19  strength and tone.  (AR 458.)

20  Plaintiff was seen again for lateral epicondylitis in the left elbow on May 31, 2023.  (AR
21  461, 542.)  Physical exam showed the same findings.  (AR 461, 542.)  Plaintiff was prescribed
22  physical therapy for two weeks.  No medications were prescribed and again, there were no
23  limitations on her return to full work/activity.  (AR 462, 543; *see also* AR 466, 547 ("Return to
24  full duty on 5/31/2019 with no limitations or restrictions").)

25  On June 28, 2019, similar findings were found again – she had no tenderness or swelling
26  of extremities, range of motion was with normal limits, and she had normal muscle strength and
27  tone.  (AR 471.) With respect to her left elbow, she had tenderness in the lateral epicondyle and
28  resisted wrist extension with pain, but palpitation was normal, she had full range of motion, her

7

1    motor strength was normal bilaterally, her motor tone was normal, sensation was intact to light
2    touch in all dermatomes, and her muscles displayed no weakness. (AR 471, 474, 486, 489.)
3    Again, there were no limitations on her return to full work/activity. (AR 471, 475, 486, 490.)
4    　　　On July 23, 2019, the same findings were made upon examination. (AR 456, 457, 603,
5    604.) On July 15, 2019, Plaintiff was seen by Rakhee Urankar, M.D., who made similar findings
6    upon examination, but also found Plaintiff's biceps and triceps strength on the left side was 4/5.
7    (AR 598.) Urankar also found that Plaintiff could return to full work/activity that day. (AR 599;
8    *see also* AR 602 ("Return to full duty on 7/15/2019 with no limitations or restrictions").)
9    　　　On August 6, 2019, Plaintiff was seen by orthopedic surgeon Jing Hsieh. (AR 510.)
10   Plaintiff did not report any difficulty with any activities of daily living. (AR 512.) Dr. Hsieh did
11   not find any tenderness to palpation in her wrist or find any evidence of wrist instability. (AR
12   514.) He found tenderness of the lateral epicondyle on the left elbow and that she was resistive to
13   wrist extension, but that her elbow motion was unrestricted. (AR 515.) Hsieh did find her
14   positive for Durkan's, Tinel's, and Phalen's bilaterally, but he also found that the ulnar nerve
15   exam at the wrists and elbows (cubital tunnel) were negative for Tinel's, paresthesia and muscle
16   weakness/atrophy. (AR 516.) He diagnosed Plaintiff with lateral epicondylitis on her left elbow
17   and bilateral carpal tunnel syndrome. (AR 516.) Dr. Hsieh requested an MRI for the left elbow to
18   see how severe her lateral epicondylitis was and an EMG/nerve conduction study for median
19   nerves bilaterally. He prescribed her etodolac 600 mg once a day and recommend a Band-IT to
20   support her tennis elbow. He concluded that Plaintiff could continue to work on a regular basis.
21   (AR 516.)
22   　　　On August 21, 2019, Plaintiff was seen by David Padgett, D.O. (AR 551.) He noted that
23   she had significant pain to palpation in her lateral and medial elbows and tenderness on palpation
24   to both wrists. He also noted that her left thenar eminence was atrophic on her left hand and she
25   was positive Tinel bilaterally at median nerve at her writs. (AR 555.) He also noted that she was
26   having a significant acute stress reaction to work issues and that her stress was elevating her pain
27   response. (AR 555.) Plaintiff was seen again by Padgett on August 28 and September 16, 2019.
28   He made the same findings on examination. (AR 575, 703.)

Padgett saw Plaintiff again on October 21, 2019.  Padgett offered her a cortisone injection but Plaintiff declined due to an adverse reaction she had to a prior shoulder injection with steroids.  (AR 492.)  The notes say the physical exam was not performed, but then also states that inspection of the left elbow joint revealed no erythema, swelling, ecchymosis, incision or drainage, no limitation in flexion, extension, pronation or supination, tenderness to palpation, and positive Tinel's sign.  (AR 493, 695.)  With the wrists, the notes stated no erythema, swelling, symmetry, atrophy or deformity, no limitation in palmerflexion, dorsiflexion, ulnar deviation, radial deviation, pronation or supination, no tenderness to palpation, and negative Finkelstein's test.  (AR 493, 695.)

Plaintiff also points to an evaluation by the orthopedic panel for the workers' compensation appeals board, which was conducted by Mark W. Howard, M.D., an orthopedic surgeon.  (AR 1124-1133.)  Plaintiff reported pain in both elbows, both wrists, and both hands.  (AR 1125.)  She states that her symptoms were aggravated with heavy lifting, gripping and grasping objects, twisting, and repetitive wrist or hand movement.  (AR 1125.)  However, she reported that she had no difficulty or pain with writing, keyboarding, pinching or fine manipulation.  (AR 1126-27.)  Upon exam of her upper extremities, the report noted she was negative for Tinel's in bilateral carpal tunnel and had no median nerve hypesthesia reporting.  She had tenderness at the lateral epicondyle but no atrophy in her hands and an otherwise unremarkable upper extremity exam.  (AR 1129.)  The diagnostic impression included left lateral epicondylitis and bilateral carpal tunnel syndrome.  (AR 1130.)  Plaintiff was rated in having a 5 percent upper extremity impairment bilaterally, which converted to a three percent whole person impairment on each side for carpal tunnel syndrome.  (AR 1131.)  Howard offered a "prophylactic recommendation" that Plaintiff "be precluded from repetitive and forceful left upper extremity grip, grasp, twist or torque" and "should be allowed an ergonomic workstation and potentially allowed workplace use of wrist splints and/or a workstation with a wrist support."  (AR 1133.)

Lastly, Plaintiff points to an internal medicine evaluation conducted by Rose Lewis, M.D. on November 24, 2020.  (AR 1166-69.)  On examination, Lewis found Plaintiff was tender to palpation on both forearms on her flexor tendons and had bilateral tenderness along the lateral

1  epicondyles but her left side was worse than her right. Lewis found that Plaintiff was negative for
2  Tinel's sign bilaterally. (AR 1168.) She also found that Plaintiff's motor strength, muscle bulk
3  and tone were 5/5 bilaterally in her upper extremities and that her grip strength was 4/5 bilaterally.
4  (AR 1168.) Lewis diagnosed her with bilateral epicondylitis, bilateral tendonitis of the flexor
5  muscles of the forearm, and "[r]ule out bilateral carpal tunnel syndrome." (AR 1168.) Lewis
6  determined that Plaintiff could handle and finger frequently. (AR 1169.)[3]

Additionally, the ALJ here considered and found generally persuasive the reports of the state agency medical consultant, C. Bullard, M.D., and W. Jackson, M.D, both of whom reviewed the entire record and opined on Plaintiff's RFC. (AR 26.) They both found that Plaintiff can frequently handle and finger with left upper extremity. (AR 230-232).) Plaintiff did not argue that the ALJ erred in finding their reports persuasive.

None of the evidence described above that Plaintiff cited to shows that the ALJ erred in rejecting Plaintiff's testimony that she was limited to using her left hand for typing or find manipulation for no more than three hours. Notably, Plaintiff does not point to any opinion from a medical provider limiting her typing or fine manipulation to no more than three hours. In fact, many that she points to state that she is able to work with no limitations. (AR 462, 466, 471, 475, 486, 490, 543, 547, 599, 602.) None of the treating, examining or consulting physicians in the record considered by the ALJ imposed any limitations on typing, keyboarding, or writing. In fact, in one of the reports to which she cites, she had reported no trouble her typing, keyboarding, or fine manipulation. (AR 1126-27.) The Court finds that the ALJ's consideration of the medical evidence in the records supports the ALJ's determination of Plaintiff's RFC.

      **ii.    Conservative Treatment.**

An ALJ can reject the subjective testimony from a claimant if there is a conservative

---

[3] Plaintiff also argues that she attended physical therapy for her upper extremity and was observed to have reduced left elbow strength, reduced left grip strength, and pain with elbow movement. (Dkt. No. 16 at p. 3 (citing AR 467, 476-477, 479-480, 482-483, 495-496, 498-499, 501-502, 504-505, 507-508, 521-522, 525-524, 528-529, 532-533, 535-536, 539-540, 548-549). However, physical therapists and physical therapy assistants are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1502(a). Regardless, their findings do not undermine the ALJ's rejection of her testimony regarding her limitation to typing or fine manipulation to no more than three hours.

course of treatment. *Tommasetti*, 533 F.3d at 1039-1049; *see also Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (finding ALJ supported his conclusion with evidence of claimant's "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"); *Parra*, 481 F.3d at 750-51 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ noted that the record reflected a conservative and minimal course of treatment. (AR 25.) Additionally, Plaintiff did not have any follow up on any issues with her upper extremities after 2019, despite the fact that she testified that she had insurance through Medi-Cal for the last two years. (AR 25.) Notably, the records reflect that Plaintiff sought medical treatment after 2019 for other issues. (AR 80-89.)

Plaintiff argues that she had a good reason to decline a cortisone injection – she declined because she had an adverse reaction when she had receive a steroid injection for her shoulder in the past. (AR 492.) Plaintiff may have a good reason to decline a cortisone injection, but the fact only one medical provider even suggested a cortisone injection and no providers suggested surgery supports the ALJ's conclusion that her conservative treatment undermined her testimony that she was limited to typing or fine manipulation for no more than three hours in an eight-hour day. Moreover, Plaintiff does not dispute that she did not seek *any* medical treatment for her upper extremities after 2019. Again, the Court finds that Plaintiff's conservative and minimal course of treatment supports the ALJ's rejection of Plaintiff's claimed limitation to typing or fine manipulation to no more than three hours.

### iii. Activities of Daily Living.

With regard to the evaluation of activities of daily living, claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1989) (quoting *Smith v. Califano,* 637 F.2d 968, 971-972 (3rd Cir. 1981) that a claimant need not "vegetate in a dark room" in order to be deemed eligible for

11

1    benefits).  The ability to maintain some daily activities does not translate into a negative

2    determination about credibility regarding ability to work.  *See Garrison*, 759 F.3d at 1016 ("The

3    critical differences between activities of daily living and activities in a full-time job are that a

4    person has more flexibility in scheduling the former than the latter, can get help from other

5    persons . . . , and is not held to a minimum standard of performance, as she would be by an

6    employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of

7    opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v.*

8    *Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).  "Only if the activity were inconsistent with claimant's

9    claimed limitations would those activities have any bearing on claimant's credibility."  *Reddick,*

10   157 F.3d at 722.

11         Plaintiff argues that the ALJ erred in considering her activities of daily living in rejecting

12   her subjective testimony about the intensity, pace, and persistence of her impairments.  The

13   evidence shows that Plaintiff was able to care for herself independently, drive, perform household

14   chores, and take walks, and that she could perform those tasks with no difficulty or only some

15   difficulty.  (AR 200, 1122, 1166, 1172.)  Plaintiff also reported no difficulty or pain with writing,

16   keyboarding, using the phone, or fine manipulation.  (AR 1127-28.)  Plaintiff argues, with no

17   citation to evidence, that her activities did not require Plaintiff to engage in extended use of her

18   left arm for more than two to three hours.  (Dkt. No. 16 at page 8.)  Given this lack of evidence,

19   and her own reporting that typing and fine manipulation did not cause her any pain or difficultly,

20   Plaintiff cannot show that the ALJ erred.  Furthermore, the ALJ's did not find the activities of

21   daily living to be "determinative of the ability to work" but rather that "such abilities do provide

22   insight" into her "functioning during the period at issue."  (AR 25.)  The ALJ did not err in

23   referring to the activities of daily living to assess Plaintiff's credibility.

24         In sum, the Court finds that the ALJ provided clear and convincing evidence in evaluating

25   Plaintiff's the intensity, persistence, and limiting effects of her symptoms and did not err in

26   rejecting her testimony that she was limited to typing or fine manipulation to no more than three

hours.[4]

### 2. The ALJ's Evaluation of Howard.

Plaintiff argues that the ALJ erred in rejecting Howard's opinion on September 27, 2020, that Plaintiff was "precluded from repetitive and forceful left upper extremity grip, grasp, twist or torque." (AR 1132.) Plaintiff argues that Howard's preclusion of repetitive gripping, grasping, twisting or torquing meant that she could not perform her past work. The ALJ found Howard's report to be less persuasive because she found Howard's report to be "inconsistent with" the reports of Jackson and Bullard, because Howard's report was rendered under worker's compensation law, which has a different set of standards, because Howard's report was not consistent with the medial record, and because Howard's report was vague in stating "as to the most" Plaintiff "can do." (AR 28.)

Howard's report did not contradict the ALJ's finding of Plaintiff's RFC because Howard addressed only "repetitive and forceful" gripping, grasping, twisting or torquing. Plaintiff argues that a large portion of her former work involved keyboarding (data entry and typing), and that her medical impairments prevented her from performing this function for the number of hours required daily for her former jobs. (AR 193-195, 214, 216, 399.)

The Vocational Expert testified that a person who could only occasionally finger and have no repetitive gripping or handling could not perform Plaintiff's past work. (AR 216.) Plaintiff fails to show how keyboarding involves repetitive *and forceful* gripping, grasping, twisting or torquing. Plaintiff does not show that keyboarding involves any forceful action. In addition, Plaintiff reported to Howard that she had no difficulty or pain in "keyboarding." (AR 1126-27 (Plaintiff reported she had no difficulty or pain with writing, keyboarding, pinching or fine manipulation).) Thus, Howard's limitations are consistent with Plaintiff's former work.

Even if the ALJ erred in rejecting Howard's opinion, the error was harmless. A court

---

[4] To the extent Plaintiff's argument is more broadly that the ALJ failed to properly evaluate the medical evidence in the record when she failed to impose a limitation on Plaintiff's typing and fine manipulation in her RFC, the Court notes that the ALJ's conclusions are well supported by the evidence in the record. As discussed above, multiple physicians, including treating, examining, and consulting, found that she was not limited in her ability to work in any manner, let alone in her ability type or in her fine manipulation.

"may not reverse an ALJ's decision based on account of an error that is harmless. *Molina*, 674 F.3d at 1111 (internal citation omitted). A court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding an ALJ's failure to consider and comment upon uncontradicted lay testimony was not harmless error). A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055. The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Here, Plaintiff fails to meet her burden.

### 3. Appeals Council Did Not Err in Rejecting Opinion by Suresh Mahawar, M.D.

Plaintiff argues that the Appeals Council erred in failing to adopt the opinion of Suresh Mahawar, M.D., which was submitted after the ALJ issued her opinion. Here, the ALJ issued her opinion on November 8, 2021, and Plaintiff submitted Mahawar's report based on a review the medical records and examination of Plaintiff on March 7, 2022. (AR 1-4.) The Appeals Council found that Mahawar's report did not relate to the period at issue, and therefore did not affect the decision about whether she was disabled beginning on November 8, 2021. (AR 2.) The Appeals Council thus held that Mahawar's report did not provide a basis for reversing the ALJ's opinion. (AR 1.)

In his report, Mahawar recounted Plaintiff's current symptoms, which did not contain any mention of carpal tunnel syndrome, lateral epicondylitis, or any pain relating to her elbows, wrists, forearms or hands. (AR 113.) Additionally, the activities of daily living which she reported having difficulty doing did not include typing, keyboarding, or fine manipulation. (AR 115.) With respect to her elbows, Mahawar found that Plaintiff did not have any deformity or swelling. (AR 116.) Additionally, there was no tenderness on the medial or lateral side of elbow and the Tinel sign was negative for compression neuropathy of right ulnar nerve. (*Id*.) The varus stress test for radial collateral ligament and vulgus stress test for ulnar collateral ligament were negative. (*Id*.) With respect to her wrists and hands, Mahawar found that there was no evidence of arthritis, synovial or joint swelling at her wrists and fingers. (*Id*.) He further found that the grinding test

14

was negative for left first metacarpophalangeal joint. (*Id.*) Additionally, there was no pain with extension of left thumb suggestive of DeQuairvan Tendinitis. (*Id.*) The Tinel signs were borderline positive in both wrists. (*Id.*) He found her upper right extremity strength was 4/5 and upper left extremity was 5-/5. (AR 117.) He opined that, due to the impairment in her elbows and wrists, Plaintiff was not able to push, pull, lift more than 10 pounds, and would not be able to use hands repetitively. (AR 174-78.)

Mahawar's opinions are part of the record because the Appeals Council considered it. *Brewes v. Comm'r of Social Security*, 682 F. 3d 1157, 1163 (9th Cir. 2012). However, his report does not require an automatic remand to the ALJ for consideration. Because there was substantial evidence to support the ALJ's decision, as discussed above, the new report from Mahawar does not require remand. The Ninth Circuit has rejected such an attempt to require remand based on a report issued after a decision by the ALJ that is supported by substantial evidence. *See*, *e.g.*, *Macri v. Chater*, 93 F.3d 540 544 (9th Cir. 1996) ("Dr. Hanbery's 1993 reports were issued after the Commissioner's decision, so they are less persuasive"); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (medical report is "less persuasive since it was obtained by [claimant] only after the ALJ issued an adverse determination"); *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), *overruled on other grounds*, *Bunnell*, 947 F.2d at 342 (Appeals Council correctly rejected report issued "months after the ALJ's adverse decision and years after his insured status expired").

Moreover, Plaintiff fails to address the determination by the Appeals Council that Mahawar's report did not relate to the period at issue. Notably, Mahawar evaluated Plaintiff on March 7, 2022. (AR 112.) He found no tenderness to her elbows, forearms, or wrists, did not see any deformity or swelling, and found that the Tinel signs were only borderline positive in her wrists. (AR 116.) Additionally, plaintiff did not report any difficulty in typing, keyboarding, or fine manipulation. (AR 115.) While Mahawar reviewed Plaintiff's prior medical records,[5] he

---

[5] Plaintiff argues that Mahawar reviewed evidence from Allen Kaisler-Meza, M.D. opining that Plaintiff was limited to keyboarding no more than 25% of normal and thus infers that the ALJ should have considered Kaisler-Meza's opinion. (Dkt. No. 16 (Citing AR 135-138).) However, the medical records at this citation from Kaisler-Meza were from the first half of 2016, which pre-date Plaintiff's alleged onset date by more than three years and do not appear in the Administrative Record other than in Mahawar's report.

15

1 does not state when the limitations he found began or whether they are continuing. Even if
2 Mahawar's report had been considered by the ALJ, the ALJ was not required to alter her opinion,
3 which was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: June 2, 2023



SALLIE KIM
United States Magistrate Judge